UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RHONDA DAVIS, INDIVIDUALLY AND AS
PERSONAL REPRESENTATIVE OF THE
ESTATES OF RAYSHONDA AND
RAYMONDA PUGH,

Case No. 03-75194

Honorable Nancy G. Edmunds

    Plaintiff,

v.

CITY OF DETROIT FIRE DEPARTMENT,
ET AL,

    Defendants.

_____/

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [62]**

    This action arises out of a December 13, 2000, fire that started in the kitchen area of Plaintiff's second floor flat. As a result of the fire, Plaintiff jumped from a window and was injured, and her two children died from smoke inhalation. Plaintiff's first amended complaint asserts civil rights claims under 42 U.S.C. § 1983 alleging that Defendants, acting under color of law, violated Plaintiff's substantive due process and equal protection rights guaranteed under the Fourteenth Amendment as a result of a policy and practice of maintaining fire hydrants in the City's more affluent neighborhoods at the expense of poor African-American and Hispanic neighborhoods.[1]

    On April 28, 2004, this Court issued an order dismissing Plaintiff's substantive due

---

[1] Although this action is brought by Plaintiff Rhonda Davis on her own behalf and as the personal representative of the Estate of her two children, this Court refers to her in the singular.

process claims. This Court maintained jurisdiction over her § 1983 claims based on Defendants' alleged violation of her equal protection rights.

This matter is now before the Court on Defendants' motion for summary judgment, brought pursuant to Federal Rule of Civil Procedure 56. Because there is no genuine issue of material fact regarding the existence of an unlawful discriminatory hydrant maintenance policy, this Court GRANTS Defendants' motion.

**I.    Facts**

On December 13, 2000, at about 2:30 a.m., a fire started in the kitchen area of the second story flat at 1564 Courtland, Detroit, Michigan, where Plaintiff resided with her son, Hashim Rhodes, and two daughters, Rayshonda and Raymonda Pugh. (E. Dawson 7/14/04 Dep. at 14; M. Juide 11/10/04 Dep. at 9.) The evening before the fire, Plaintiff was scheduled to work the afternoon shift but did not go in because there was a heavy snowfall. Instead, she picked up a friend, Melinda Juide, bought groceries, and then returned to her home. (Pl.'s 9/15/04 Dep. at 24-24, 27.) Plaintiff's boyfriend, Carlos Lumpkin, and his friend, Brian Kennedy, joined them. (*Id.* at 28-29.) Plaintiff and Juide were playing Passout, a board game that involves drinking alcohol and smoking marijuana, and Kennedy joined in the game. (*Id.* at 31-33; Juide Dep. at 10-11.)

While playing, Plaintiff prepared dinner, cooking in pans on the stove top. (Pl.'s Dep. at 34.) The adults and Plaintiff's children ate dinner at approximately 9:00 p.m., and the children were in bed by 10:00 p.m. (*Id.* at 35-35.) That night they all slept in a bedroom at the rear of the flat. (Juide Dep. at 8-9.)

The adults continued to drink alcohol and smoke marijuana until approximately 1:00 a.m. (Pl.'s Dep. at 36-37.) They then went to bed. Juide and Kennedy slept on the couch

in the livingroom at the front of the flat. Plaintiff and Lumpkin slept in the bedroom adjacent to the flat's diningroom. (*Id.* at 38.)

Sometime around 2:00 or 3:00 a.m., Plaintiff awoke to the smell of smoke which filled the room in which she slept. (*Id.* at 23-24, 42.) In a panic, Plaintiff got out of bed, and found her room so dense with smoke she could not see anything. (*Id.* at 42-44.) She called out to her children, trying to find them. (*Id.* at 44-45.) She moved through the diningroom toward the livingroom and could hear fire crackling. (*Id.* at 45-46.) As she entered the livingroom, Plaintiff tripped over the couch. She then made her way to the livingroom windows which overlooked the upper level front porch. (*Id*. at 46-47.) Plaintiff tried to break one of the panes with her hands so she could get out. (*Id.* at 47-48.) She didn't hear anyone and figured they had all left already. (*Id.* at 48.) She could hear nothing but the crackling sound of the fire. (*Id.*) After unsuccessfully trying to break the window, Plaintiff stepped back and ran through the window. She landed on the ground, flat on her back, looking up at the burning house. (*Id.* at 48-50.) She recalls seeing Juide and Kennedy outside. (*Id.* at 50.) She does not recall when the firemen arrived on the scene. (*Id.* at 52-54.) Plaintiff suffered severe and permanent paralyzing injuries as a result of her jumping from the second story flat. (*Id.* at 71-76.)

Unbeknownst to Plaintiff, her son, Hashim, awoke in the rear bedroom to find it filled with black smoke from ceiling to floor. (H. Rhodes 10/25/04 Dep. at 9.) One of his sisters was awake, so the two of them woke up his other sister. (*Id.* at 10.) His two sisters then grabbed hands, opened up the bedroom door, and went out to try and find their mother, closing the door behind them. He does not know what happened to them after that because they did not respond when he called their names, and he did not see or hear them

again.  (*Id.* at 10-11.)  He did not hear anyone, only the crackling of the fire.  (*Id.* at 12.)  Hashim tried to get some air, breaking the window in the bedroom.  At first, he was afraid to jump and just called out for help.  Then he dove out of the window, landing on his back in the snow.  (*Id.* at 11, 13.)

When the Detroit Fire Department arrived on the scene, they were unable to get water from the two hydrants closest to Plaintiff's home.  They eventually secured a water source at a third hydrant and began fire fighting operations.  (E. Dawson 7/14/04 Dep. at 7-10.)

Plaintiff filed suit against Defendants on March 28, 2003.  The complaint was amended to add the § 1983 claims on December 16, 2003.  Defendants then removed the action to this Court on December 30, 2003.  This Court remanded Plaintiff's state law claims, retained jurisdiction over the § 1983 claims, and ordered Plaintiff to file an amended complaint, pursuant to Rule 8, clarifying precisely what constitutional rights Plaintiff was alleging she was deprived.  Plaintiff filed her first amended complaint on February 18, 2004.

Plaintiff's first amended complaint asserts civil rights claims under 42 U.S.C. § 1983 alleging that Defendants, acting under color of law, violated her substantive due process and equal protection rights guaranteed under the Fourteenth Amendment as a result of a policy and practice of maintaining fire hydrants in the City's more affluent neighborhoods at the expense of poor African-American and Hispanic neighborhoods.  On April 28, 2004, this Court issued an order dismissing Plaintiff's substantive due process claims.  This Court maintained jurisdiction over her § 1983 claims based on Defendants' alleged violation of her equal protection rights.

This matter is now before the Court on Defendants' motion for summary judgment on Plaintiff's remaining equal protection claims.

## II.   Standard for Summary Judgment

Summary judgment is appropriate only when there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The non-moving party may not rest upon its mere allegations, however, but rather "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice. Rather, there must be evidence on which the jury could reasonably find for the non-moving party. *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).

## III.   Analysis

The Court now evaluates Plaintiff's equal protection claims. Plaintiff argues that Defendants discriminated against her on the basis of race and/or economics because the

5

City of Detroit failed to maintain the fire hydrants in poor African-American and Hispanic neighborhoods in the same manner and on the same scale as it did in more economically advantaged neighborhoods and business districts. "The basis of any equal protection claim is that the state has treated similarly-situated individuals differently." *Silver v. Franklin Twp. Bd. of Zoning Appeals*, 966 F.2d 1031, 1036 (6th Cir. 1992).

### A. Alleged Race-Based Maintenance Policy - Strict Scrutiny Review

Turning first to Plaintiff's racial discrimination claim, Plaintiff does not argue that the Detroit Fire Department's policies and/or practices regarding maintenance of the City's fire hydrants is discriminatory on its face. Thus, as the Sixth Circuit has observed, "[w]here facially neutral legislation is challenged on the grounds that it discriminates on the basis of race, the enactment will be required to withstand strict scrutiny only if the plaintiff can prove that it was motivated by a racial purpose or object, or is unexplainable on grounds other than race. Proving that a law has a racially disparate impact, without more, is therefore insufficient to establish a violation of . . . the Fourteenth . . . Amendment." *Moore v. Detroit Sch. Reform Bd.*, 293 F.3d 352, 369 (6th Cir. 2002) (internal quotes and citations omitted). Thus, to successfully state an equal protection claim based on racial discrimination, Plaintiff must present evidence showing that Defendants purposefully discriminated on the ground of race when deciding what fire hydrants to maintain in the City of Detroit. Given the demographics of the City of Detroit, this Court previously observed that this will be a difficult if not impossible burden for Plaintiff to meet.

Discovery closed in this matter on May 26, 2005,[2] and Plaintiff has failed to meet its

---

[2] The trial date is set for November 2005, with the final pretrial conference to be held on October 20, 2005.

burden of showing that a genuine issue of material fact exists on her claim that Defendants have a policy of maintaining the City's fire hydrants in a manner that purposefully discriminates on the basis of race. The Court intentionally waited until after the close of discovery to allow Plaintiff time to either request an extension of the discovery deadline or to garner and provide the Court with evidence that defeats Defendants' motion for summary judgment. Plaintiff did neither.

The City's hydrant policy is as follows. Individual Fire Department companies are responsible for inspecting the hydrants in each of its assigned hydrant districts. Each of the City's 30,490 hydrants are inspected each month during a six month hydrant inspection season. (C. Dishman, Superintendent of the Maintenance and Repair Division, Detroit Water and Sewer Department, 3/2/05 Dep. at 5, 13-14; O. Watkins, Sergeant, Detroit Fire Department, 2/28/05 Dep. at 9-11.) Those requiring repairs are reported to a central Fire Department authority who, in turn, forwards a consolidated report to the Water Department which attends to the needed repairs. Completely inoperable hydrants; i.e., those designated "out of service," are given priority. All others are repaired on a random basis. (Watkins Dep. at 12-17; Dishman Dep. at 8-10, 15-21, 28-29, 31, 34, 47-48.)

Defendants present evidence, not refuted by Plaintiff, that the City has a policy of maintaining its fire hydrants in a manner that does not purposefully discriminate on the basis of race. (R. Molliner, Battalion Chief, Detroit Fire Department,5/25/05 Dep. at 8, 75-78; H. Brown, Captain, Detroit Fire Department, 5/05/05 Dep. at 6, 43-45; O. Watkins Dep. at 58-64; C. Dishman Dep. at 70-72.) Accordingly, Plaintiff's equal protection claim based on unlawful racial discrimination is dismissed.

**B. Wealth-Based Maintenance Policy - Rational Basis Review**

Turning next to Plaintiff's claim that she was discriminated against on the basis of her lack of wealth, it is well-established that "poverty is not a 'suspect class,' and discriminatory classifications on the basis of wealth receive only rational basis scrutiny." *Johnson v. Dept. of Public Safety and Correctional Services*, 885 F. Supp. 817, 820-21 (D. Md. 1995) (citing *Maher v. Roe*, 432 U.S. 464, 471 (1977) and *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 24 (1973)).  When the classification is based on wealth, "the allegedly discriminatory policy must bear only 'a rational relationship to legitimate state purposes.'" *Id.* (quoting *San Antonio*, 411 U.S. at 40).  Given this standard, this Court previously observed that this too will be a difficult burden for Plaintiff to meet.

Defendants present evidence, not refuted by Plaintiff, that its fire hydrant maintenance policy is rationally related to its legitimate state interest of attending to the public health, safety and welfare of its residents.  Although it may not be the most modern, efficient maintenance program, it is rationally related to the legitimate state goal of maintaining the City's hydrant inventory.  Moreover, there is no evidence in the record supporting Plaintiff's claim that the program is applied in a manner that intentionally discriminates against poor neighborhoods.  (R. Molliner Dep. at 77-78.)  Accordingly, Plaintiff's remaining equal protection claim is dismissed.[3]

## IV.  Conclusion

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED. Plaintiff's amended complaint is dismissed.

---

[3] Because Defendants succeed on their initial equal protection argument, there is no need for the Court to address their additional argument on lack of proof of causation.

       s/Nancy G. Edmunds
       Nancy G. Edmunds
       United States District Judge

Dated: June 30, 2005

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 30, 2005, by electronic and/or ordinary mail.

       s/Carol A. Hemeyer
       Case Manager